# Jasper's Executrix et al. v. Jasper.

(Decided Dec. 18, 1936.)

E. T. WESLEY, GLADSTONE WESLEY, and V. P. SMITH for appellants.

B. J. BETHURUM and H. H. DENTON for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

On August 31, 1933, appellee and her sister Mrs. Moore, daughters of appellant and decedent T. E. Jasper, filed their petition in equity seeking recovery of certain sums of money which they claimed they were entitled to from the estate under the father's will. Reference is made to Jasper v Jasper, 256 Ky. 203, 76 S. W. (2d) 22, 25, for a resume up to the time the case was remanded.

In the former case we construed certain clauses of the will providing for support, maintenance and education of the children of decedent who were unmarried and living with their mother. These parts of the will, which were subject to discussion on the first appeal, provided that rents and income from the properties devised should be used for support and maintenance of the widow and the unmarried children residing with her. The testator expressed the belief that the income from the estate would furnish sufficient for the maintenance and comfort of the widow and the unmarried children residing with her. The expenditures were left to the discretion of the widow, who was made executrix, and if in her discretion it was found necessary, she

might use such of the principal for the purposes declared. The opinion cited disposed of the question as to the extent of her discretion.

In the original petition, appellee and her sister sought to recover $5,000 each from the estate for "back money due them for support contemplated under the will, and for an order requiring the executrix to pay to them sufficient sums out of the income to support them in the manner provided by the will." Their right to relief was based on allegations that the executrix had persistently refused to furnish them funds for support or education; that the testatrix under certain influences had refused to allow plaintiffs to reside in the home with her, thus compelling them to leave and earn money to pay for their support and education.

In the opinion supra, we held that the lower court had improperly sustained a demurrer to the petition, since as was said, "the facts pleaded are sufficient to show that appellee has been, and is being, denied the right to live in the home with her mother, and receive any portion of the income for her support and maintenance, we think the petition, as amended, makes out a prima facie case for relief, and that the demurrer thereto was improperly sustained."

And we further said:

"It not appearing that appellant herself has expended any money on her education, or that she now desires further education, that feature, in so far as the present pleadings are concerned, is eliminated from the case."

The court further held that if as alleged in the petition, appellee's mother had denied her the right to live in the home and had refused to give her any portion of her father's estate for her support and maintenance, she should be required to admit her to the home and pay to her, if the income from the estate will permit, a reasonable sum for her clothing and other things suitable to her station in life, or if refusal be continued, to pay her a reasonable sum for maintenance and support, including her board. Further, that if by reason of her mother's refusal to permit appellee to live at home, she had been forced to live elsewhere, she might recover such reasonable sum as she may have expended for maintenance, including board outside the home.

When the case went back to the circuit court, appellant alleged by amended petition No. 3 that since the death of her father she has expended for educational purposes $600 a year of her own money for each of the years prior to the institution of her suit, and that she desired further education during the coming five years which will cost her the same amount.

On the return of the case, issues were joined by appropriate pleadings. Depositions were taken and the cause submitted, with the result that the court adjudged "that the plaintiff recover of the executrix the sum of $3,000; * * * this being such sum as a whole as appears from the case and proof will reasonably compensate the plaintiff for board, maintenance and education, expended by herself while outside of her home." A motion for new trial was overruled, and this appeal is prosecuted.

The case here presented turns on paragraph No. 4 of the summarization of this court in the former opinion, which reads as follows:

"If, however, it should develop that appellant's departure from the home was voluntary, or was rendered necessary by her own conduct toward her mother, she is not entitled to anything for board and maintenance outside the home."

Both parties agree that in so far as the construction of the will of T. E. Jasper is concerned, and the court's conclusions as to reciprocal rights and duties of the parties are involved, the opinion of the court on the first appeal is the law of the case, and in this they are correct. Carrithers et al. v. Jeans' Executor, 259 Ky. 20, 81 S. W. (2d) 857, and cases cited. Parties by their briefs agree that the question presented for our solution, one of fact, depends on the proof introduced by the contestants in this unfortunate and regrettable situation.

The testator died November 4, 1928, leaving surviving the widow and five children. He left a fairly respectable estate, though it is shown that his indebtedness was considerable, and due to matters over which neither the children nor the mother had control, quite a sum was necessarily expended in order that the estate might be placed on an income producing basis. Later the estate, under the management of the executrix has proven to be productive of income sufficient.

for the carrying out of the provisions of the will without encroachment upon the corpus of the estate.

At the time of the death of testator, the appellee was twenty-two or twenty-three years of age, and was then, and had been, teaching school for five years, during which time she had lived at home; she had received two years of college work, and after the death of her father had gained her A. B. and Master's degree.

As shown by the record, she instituted her suit in August, 1933, nearly five years after the death of testator. From her testimony it is made clear that she never asked her mother for money to aid her in her educational pursuits. On one occasion (time not stated) she borrowed money from the mother when she was at summer school, but this she voluntarily paid back. At another time when she was working on her Master's degree her mother refused to sign her note. It is not claimed by appellee that during the five years after the death of her father she asked for money for her board or maintenance.

Be this as it may, under the opinion of the court on the first appeal, there seems to be only one question for us to answer, that that is, stating it bluntly, whether or not the mother forced the daughter to leave the home, thus purposely nullifying the provisions of the will as to her duties as trustee to maintain, support, and educate the daughter, or whether the daughter by her own conduct deprived herself of the benefits which she now claims under the will.

On this point we are compelled to the view that the appellee has failed in substantiating her position. She has failed to show that her mother forced her to live elsewhere; she has not satisfactorily shown that her continued absence from home was not voluntary or due to her own conduct. Appellee admits when asked whether her mother ever asked her to leave home that she had not, saying in response to the question, "No, I do not think she ever ordered me to leave. They know I get nervous, and Mamma says the same thing over and over until I have to get up and leave." On the questions as to whether or not she spoke to her mother disrespectfully or disgracefully, or talked in an insulting way, she replied, "No, my mother jumped on me. I can not stand a fuss." She said she had not talked to her mother insultingly until her mother had

so talked to her, and then "because she said mean and hateful things to me and I am of a nature that when people mistreat me I come back at them." Appellee points out several instances in which she was mistreated and denied the attention that a daughter ordinarily would and, perhaps should think herself entitled to, but these are matters of minor importance and such as would and do frequently arise in what might be termed "a well regulated family." Appellee's testimony was to some extent fortified by that of her sister Mrs. Moore, and on some immaterial points by other relatives.

However, when we look to the testimony of appellant we are confronted with a different picture of internal affairs, which undoubtedly caused the conditions existing in this home. True it is that the adverse testimony is of appellant herself, a servant in the home, close relatives and friends who were accustomed visitors, but since this testimony is not attacked, it must be considered by the court.

From appellant's proof it is shown that the daughter was never mistreated or ordered from the home; that she was never refused any reasonable request and had always received the same treatment accorded the other children. It is quite apparent from the proof that the executrix has used her best efforts to preserve the estate of her deceased husband. She has not, so far as the record shows, squandered any of the estate, or expended more of the income for her own use and benefit, or for the use and benefit of any of the other children than for appellee, or than as warranted by the testator's will. Visitors, some of them relatives it is true, and the servant, testify that she provided well, and in such way as not to demonstrate any favoritism between her children.

It would serve no beneficial purpose to go further into details of the testimony adduced on behalf of appellee, nor would it be of benefit to either party, or to persons not directly interested to recite in detail the testimony of appellant's witnesses. Suffice it to say that upon a reading of the testimony, a condition of affairs is shown to have existed which in our opinion justifies a conclusion that the rift in the family affairs was primarily caused by the attitude and demeanor of appellee. It may not be that she is altogether in fault, but the conclusion cannot be escaped that her own

conduct brought about the situation in which she finds herself at this time. Not only so, it seems quite clear that for a great part of the time involved, she voluntarily absented herself from home and chose to go her own way.

After a careful reading of all the evidence presented, we are of the opinion that appellee has failed to sustain the burden; the preponderence is on the side of appellant, and that the chancellor should have so adjudged.

Judgment reversed with directions to the court below to set aside the judgment and dismiss appellee's petition.